UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RAYMOND BJORK,

                              Petitioner,

        -against-                                    9:15-CV-1097 (LEK)

SUPERINTENDENT,

                              Respondent.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Petitioner Raymond Bjork commenced this action by filing a petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. Dkt. No. 1 ("Petition"). He raises the following substantive

grounds for habeas relief: his convictions were not supported by sufficient evidence; the

admission of certain testimony was prejudicial and denied him a fair trial; and his trial and

appellate counsel were ineffective. Pet. at 6–8. Respondent opposes the Petition, Dkt. No. 12

("Answer"); see also Dkt. No. 12-1 ("Opposition"); Dkt. Nos. 12-2 to -5 ("Record"), and

Petitioner has submitted a traverse, Dkt. No. 16 ("Traverse").[1] For the reasons that follow, the

Petition is denied and dismissed.

## II.    BACKGROUND

Following a jury trial in St. Lawrence County Court, Petitioner was convicted of two

counts of criminal sexual act in the first degree in violation of N.Y. Penal Law section 130.50(1),

sexual abuse in the first degree in violation of N.Y. Penal Law section 130.65(2), rape in the first

_____

[1]    The cited page numbers for the Petition and Traverse refer to those generated by the
Court's electronic filing system ("ECF").

degree in violation of N.Y. Penal Law section 130.35(2), burglary in the second degree as a

sexually motivated felony in violation of N.Y. Penal Law sections 130.91, 140.25(2), and

unauthorized use of a vehicle in the third degree in violation of N.Y. Penal Law

section 165.01(1). Pet. at 1; Opp. at 12–13; People v. Bjork, 963 N.Y.S.2d 472, 475 (App. Div.

2013); Dkt. No. 15-6 ("Trial Transcript") at SR 2014–16.[2] The convictions stemmed from an

incident that occurred in February 2009 in Ogdensburg, New York. Bjork, 963 N.Y.S.2d at 475.

The Appellate Division described the incident as follows:

> In February 2009, the victim, who had spent an evening drinking in
> the City of Ogdensburg, St. Lawrence County, encountered defendant
> at a bar. Defendant allegedly approached the victim and "brushed up
> against her" repeatedly in spite of her efforts to rebuff him. The
> victim became ill due to her intoxication, and [a witness], the
> [witness's spouse] and defendant took her to her home later that
> night. The [witness] and defendant assisted the victim upstairs and
> put her to bed, where the victim allegedly asked [the witness] to make
> sure defendant left the house, and then fell asleep. The [witness]
> testified that defendant refused to leave the house at her request and
> did not do so until the [witness's spouse] intervened. The [witness
> and the witness's spouse] offered defendant a ride to his home but, at
> his request, dropped him off instead at a friend's apartment that was
> closer to the victim's home. Sometime during the next hour, the
> victim allegedly awoke to find defendant in her bed, having vaginal
> intercourse with her.

Id. The specific facts are known to the parties and will be repeated only to the extent necessary to

address Petitioner's claims.

On November 24, 2010, the trial court sentenced Petitioner as a second violent felony

offender to serve concurrent prison terms of fifteen years on the criminal sexual act counts,

fifteen years on the sexually motivated felony count, seven years on the sexual abuse count, and

---

[2]    The Trial Transcript appears at pages SR 1003–2072, and is located at Docket
Numbers 15-3 to -6.

one year for unauthorized use of a vehicle with fifteen years of post-release supervision. Id.; Trial Tr. at SR 2066–68. The trial court also sentenced Petitioner to serve a consecutive prison term of eighteen years on the rape count with twenty years of postrelease supervision. Trial Tr. at SR 2067–68.

Petitioner, through appellate counsel, appealed. R. at SR 1–71. He argued that (1) the first-degree criminal sexual acts were "multiplicitous"; (2) the evidence was insufficient to support the convictions for first-degree criminal sexual act (Counts 1 and 2), first-degree sexual abuse (Count 3), first-degree rape (Count 4), and second-degree burglary as a sexually motivated felony (Count 5); (3) even if the charges were proved beyond a reasonable doubt, Petitioner proved an affirmative defense under Penal Law section 130.10(1); (4) trial counsel was ineffective; (5) the form and content of the verdict sheet constituted error per se; (6) the verdicts with regard to Counts 1 to 6 were against the weight of the evidence; (7) Petitioner was denied his right to a speedy trial, and (8) the sentence was harsh and excessive. Id.

On April 25, 2013, the Appellate Division, Third Department reversed Petitioner's first degree criminal sexual act convictions (Counts 1 and 2) and dismissed those charges. Bjork, 963 N.Y.S.2d at 480. The Appellate Division affirmed the conviction and sentence as modified. Id. Petitioner, again through appellate counsel, sought leave to appeal to the New York Court of Appeals, R. at SR 2082–96, which was denied on August 5, 2013, People v. Bjork, 995 N.E.2d 854 (N.Y. 2013). On February 24, 2014, the United States Supreme Court denied Petitioner's pro se petition for certiorari. Bjork v. New York, 134 S. Ct. 1306 (2014).

On August 28, 2014, Petitioner filed a pro se application for a writ of error coram nobis in which he argued appellate counsel failed to provide effective assistance by failing to argue that

the grand jury proceeding was defective as a result of the prosecution's failure to instruct the grand jury on the affirmative defense set forth in Penal Law section 130.10(1), and the trial court abused its discretion in allowing the People to re-present charges to the grand jury. R. at SR 2152–2216. The state did not file opposition papers. On December 4, 2014, the Appellate Division denied the petition, id. at SR 2217, and on May 7, 2015, the Court of Appeals denied petitioner's pro se application for leave to appeal, id. at SR 2252.

This action followed.

## III.  LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); accord Cullen v. Pinholster, 563 U.S. 170, 181–82 (2011). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." Felkner v. Jackson, 562 U.S. 594, 598 (2011) (per curiam) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013) (per curiam) (quoting

Harrington v. Richter, 562 U.S. 86, 102 (2011)); accord Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

Additionally, AEDPA forecloses "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Parker v. Matthews, 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting Renico, 559 U.S. at 779). A state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. Wood v. Allen, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). Finally, federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." Id. at 473–74 (quoting § 2254(e)(1)).

## IV. DISCUSSION

### A.  Sufficiency of the Evidence

Petitioner argues that the evidence was legally insufficient to support the burglary, rape, and sexual abuse convictions. Pet. at 6–7. With respect to the rape and abuse charges, Petitioner argues the State failed to establish that the victim was physically helpless and did not consent to intercourse, and that the state failed to disprove Petitioner's affirmative defense that he was unaware of the "facts or conditions responsible" for the victim's incapacity to consent. Id. at 7. Respondent argues that the legal sufficiency issue is barred because the Appellate Division relied on an adequate and independent state ground to deny the claim and it lacks merit. Opp. at 21–27. The Court agrees.

Petitioner raised both his sufficiency and weight claims on direct appeal. R. at SR 13–30, 42–52. Despite the Appellate Division's finding that the sufficiency claim was unpreserved, it is not clear from the court's opinion that it relied on the preservation rule to bar review of that claim. Bjork, 963 N.Y.S.2d at 476–79. The Appellate Division did not conduct a stand-alone sufficiency analysis, but the court appears to have "implicitly" addressed Petitioner's sufficiency claims through its weight-of-the-evidence review, which "necessarily subsumed review of" the sufficiency claim. See Parker v. Ercole, 666 F.3d 830, 834–35 (2d Cir. 2012) (stating that under New York law, "a weight-of-the-evidence claim requires [a] more exacting review than an insufficiency claim, because it entails a weighing of the evidence and an assessment of the credibility of the State's witnesses," and that "to the extent the Appellate Division decided that [the] conviction was not against the weight of the evidence, it necessarily decided that there was sufficient evidence to support the verdict"). To the extent the Appellate Division rejected Petitioner's sufficiency claim, that decision is entitled to AEDPA deference and was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

In any event, the evidence supported the Appellate Division's rejection of Petitioner's sufficiency claim. Evidence is sufficient to support a conviction whenever, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Parker v. Matthews, 567 U.S. 37, 43 (2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993). "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn

from evidence admitted at trial." <u>Parker</u>, 567 U.S. at 43 (quoting <u>Cavazos v. Smith</u>, 565 U.S. 1, 2 (2011) (per curiam)). Indeed, "a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the 'decision was objectively unreasonable.'" <u>Parker</u>, 132 S. Ct. at 2152 (quoting <u>Cavazos</u>, 565 U.S. at 2). Finally, "[§] 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983).

To sustain Petitioner's conviction of sexual abuse in the first degree, the State had to prove that he subjected the victim to sexual contact when the victim was "incapable of consent by reason of being physically helpless." N.Y. Penal Law § 130.65(2). As relevant here, "sexual contact" means "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party." N.Y. Penal Law § 130.00(3). "Physically helpless" means that "a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act." <u>Id.</u> at § 130.00(7).

To sustain Petitioner's conviction of rape in the first degree, the State had to prove he engaged in sexual intercourse with the victim, who was incapable of consent by reason of being physically helpless. <u>Id.</u> at § 130.35(2). Testimony that a victim "was asleep when the intercourse occurred satisfies the element of physical helplessness." <u>People v. Krzykowski</u>, 742 N.Y.S.2d 138, 140 (App. Div. 2002).

Here, the victim testified that she consumed numerous alcoholic beverages at several establishments on the evening in question, later becoming "sick" and vomiting multiple times, and was unable to "recall anything about getting into [her] house." Trial Tr. at SR 1301–06, 1309–10. When she woke up in her bed, Petitioner was "on top of" her, her pants were "around

one ankle," one of her legs was "over his shoulder," and he was having intercourse with her. Id. at SR 1316–17. She then "told him to get off." Id.

Several witnesses testified as to their observations of the victim during the evening. One witness testified that the victim was "very intoxicated," "slurr[ed] her words[,] didn't keep her head up when she was talking[,] . . . [and] didn't get out of [a] car." Id. at SR 1483–84. Another witness testified that the victim was "nauseous," "got sick in [a] parking lot," and appeared to be "intoxicated," "out of it," and "stagger[ing]." Id. at SR 1495, 1499, 1504–06. The witness testified that she "helped" the victim out of her car, into her house, and into her bedroom because the victim "was having trouble walking." Id. at SR 1506–07. The victim then "climbed into bed . . . and just pretty much passed out" while fully clothed. Id. A police officer, Sergeant August J. Bonno, testified that during his interview of the victim the following morning, the victim's eyes were bloodshot, she smelled of alcohol, and she was visibly upset and crying. Id. at SR 1405.

Testing performed the morning after the incident revealed the victim's blood alcohol content was .09, which was higher than the legal limit for operating a motor vehicle. Trial Tr. at SR 1431–32, 1437. A forensic scientist testified that testing indicated that DNA from perianal and vaginal swabs taken from the victim was "consistent with" Petitioner's DNA. Trial Tr. at SR 1595, 1603–04, 1609–11. In light of the evidence, the Court, like the Appellate Division, finds no reason to disturb the rape and sexual abuse convictions and rejects Petitioner's contention that the State did not meet its burden of proving that the victim was physically helpless. Bjork, 963 N.Y.S.2d at 476.

To sustain Petitioner's conviction of burglary in the second degree as a sexually motivated felony, the State had to prove Petitioner knowingly entered or remained unlawfully in the victim's dwelling with intent to commit a crime therein, having committed the offense for the purpose, in whole or substantial part, of his own direct sexual gratification. N.Y. Penal Law §§ 130.91, 140.25(2). As relevant here, a person "enters or remains unlawfully" in or upon premises when he is not licensed or privileged to do so. N.Y. Penal Law § 140.00(5). Petitioner claims "the testimony established [he] was invited into [the] victim's home, and . . . there was no proof that defendant unlawfully entered the home after the fact." Pet. at 6. However, the victim testified that while at one of the establishments, she repeatedly told Petitioner to leave her alone, stating, "Get away from me, leave me alone." Trial Tr. at SR 1304, 1306. The victim told other individuals that she "wasn't interested" in Petitioner and that she had informed him to leave her alone. Id. at SR 1308. A witness testified that after the victim was driven home, the victim "climbed into bed . . . [and] just pretty much passed out." Id. at SR 1507–08. However, while putting the victim to bed and in the presence of Petitioner, the victim asked the witness to "ma[ke] sure [Petitioner] left with [the witness]." Id. at SR 1510–12. The witness and Petitioner "went back downstairs" and the witness "told [Petitioner] that [the victim] was in bed and that [they] were to leave." Id. at SR 1507–08. The witness asked Petitioner to leave "[b]ecause [the victim] was passed out." Id. at SR 1508. The witness's spouse later "had [to] . . . go in [the victim's house] and get [Petitioner] . . . [b]ecause he didn't want to leave" even after the witness "told him repeatedly that [they] had to leave." Id. at SR 1512. After Petitioner left the victim's house, he told the witness the door was locked, the witness checked the door, and upon finding the door unlocked, the witness locked the door. Id. at SR 1514–15. The witness then dropped

Petitioner off at a friend's house. Id. at SR 1516-18. The victim testified that during a telephone call the morning after the incident, Petitioner admitted to the victim that he had returned to the victim's home, performed oral sex on her, and placed his fingers in the victim's vagina; however, the victim did not invite Petitioner into her house and did not open the door for him to enter her house. Id. at SR 1341–42.[3]

Accordingly, the Appellate Division's findings were reasonable in light of the evidence and not contrary to clearly established Supreme Court precedent. Bjork, 963 N.Y.S.2d at 478–79. To the extent Petitioner argues the jury should have credited his version of events, Pet. at 6; Traverse at 5–7, "§ 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall, 459 U.S. at 434; see also Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments of both of these issues.").

In sum, Petitioner's sufficiency of the evidence claims are denied because, on this record, the Appellate Division's apparent rejection of Petitioner's sufficiency claims was reasonable and was not contrary to clearly established Supreme Court precedent.[4]

---

[3]    On direct appeal, the State noted that during a "controlled call" that took place the morning after the incident, Petitioner admitted to the victim that she had not opened the door to her home to let him into her home. Opp. at 10; Trial Tr. at SR 1365, 1367, 1381. An audio recording of this telephone call was played, but not transcribed, at trial. Trial Tr. at SR 1365, 1367, 1381.

[4]    In light of the Court's review of Petitioner's sufficiency claims, the arguments Petitioner asserted as possible attempts to show cause for procedural default, Pet. at 7; Traverse at 2–3, are moot.

**B. Admission of Sergeant Bonno's Testimony**

Petitioner argues that the admission of Sergeant Bonno's testimony that the victim's door was or may have been "carded" was prejudicial and denied him a right to a fair trial. Pet. at 7. Respondent argues the claim is procedurally barred because Petitioner did not present it in federal constitutional terms in state court. Opp. at 28. Petitioner argues the claim is exhausted and was "fairly presented" to the state courts. Traverse at 9–11.

An application for a writ of habeas corpus shall not be granted until a petitioner exhausts all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." § 2254 (b)(1). The exhaustion requirement "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Jimenez v. Walker, 458 F.3d 130, 148–49 (2d Cir. 2006) (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)).

To properly exhaust a claim, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that he raise all claims in state court before raising them in a federal habeas corpus petition. Id. Substantive exhaustion requires that the petitioner "fairly present" each claim for habeas relief "in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004). Petitioner must also use the proper procedural vehicle so that the state court may pass on the merits of his claims. Dean v. Smith, 753 F.2d 239, 241 (2d Cir. 1985); Barton v. Fillion, No. 03-CV-1377, 2007 WL 3008167, at *5 (N.D.N.Y. Oct. 10, 2007). A petitioner satisfies the fair presentation requirement by:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) (quoting Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir.1982)).

In this case, Petitioner did not raise his claim that the admission of Sergeant Bonno's testimony denied him his federal constitutional right to a fair trial in any state court. R. Instead, on appeal to the Appellate Division, he argued the evidence was insufficient to support his conviction of burglary in the second degree as a sexually motivated felony, claiming, in part, the admission of the testimony was "error and gravely prejudicial." Id. at SR 20. Moreover, Petitioner's claim relied solely on New York Penal Law. Id. at 19–21. Thus, Petitioner failed to alert the Appellate Division to the federal constitutional nature of the claim as required.

Similarly, Petitioner failed to alert the New York Court of Appeals to the federal constitutional nature of his claim, making only a passing reference to a right to a "fair trial." Specifically, in his sufficiency challenge, Petitioner argued that the admission of Sergeant Bonno's testimony "goes directly to defendant's right to a fair trial" and "implicates and impacts upon defendant's Constitutional right to a fair trial." R. at SR 2090–91 (quoting People v. Hamlin, 71 N.Y.2d 750 (1988)). However, Petitioner cited only one state court case to support this assertion, and a passing reference to the right to "a fair trial" does not alert the Court of Appeals to the federal nature of the claim as required. See, e.g., Adams v. Robertson, 520 U.S. 83, 89 n.3 (1997) (explaining that "passing invocations of 'due process'" that "fail to cite the

Federal Constitution or any cases relying on the Fourteenth Amendment, but could have just as easily referred to the due process guarantee of the [state constitution] . . . [do] not meet our minimal requirement that it must be clear that a *federal* claim was presented." (citations omitted)); Maxwell v. Greiner, No. 04-CV-4477, 2008 WL 2039528, at *5 (E.D.N.Y. May 12, 2008) ("[P]etitioner's passing reference to a constitutional right is insufficient in light of the fact that his entire argument exclusively relies on and discusses New York state cases applying New York state law.").

Additionally, the challenge to the testimony, which was a part of Petitioner's sufficiency challenge, does not "call to mind a specific right protected by the constitution," or allege "a pattern of facts that is well within the mainstream of constitutional litigation." Carjaval v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) (noting a petitioner "must present his challenge in terms that are 'likely to alert the state courts to the claim's federal nature'"); see also Brown v. Senkowski, 152 F. App'x 15, 17–18 (2d Cir. 2005) ("[A]ny fair reading of petitioner's application for leave to appeal to the New York Court of Appeals indicates that petitioner's application rested exclusively on state law grounds," thus "fail[ing] to alert the New York Court of Appeals as to the federal constitutional nature of petitioner's . . . claim."); Cosby v. LaValley, No. 12-CV-704, 2014 WL 3734213, at *17 (N.D.N.Y. Jul. 28, 2014) (Kahn, J.) (holding that petitioner failed to exhaust his state court remedies regarding his evidentiary claim where appellate counsel "cited only New York State cases, and her argument contained no federal constitutional analysis," and noting "the mere claim based on an erroneous evidentiary ruling does not serve to exhaust the claim for federal habeas corpus purposes"); Bristol v. Superintendent, No. 04-CV-1230, 2008 WL 2097160, at *5 (N.D.N.Y. May 19, 2008) (finding the petitioner's claims regarding

13

testimony were unexhausted, noting the claims "rested entirely on state law" and "[t]he record suggests that Petitioner did not alert the state courts to the federal nature of these claims because the Appellate Division rejected them based solely on state law without reference to the federal constitution or to federal law").

In sum, Petitioner did not give the Appellate Division or the Court of Appeals notice that he was raising a federal constitutional issue in relation to the admission of Sergeant Bonno's testimony regarding "carding." His claim that the testimony was prejudicial and denied him a right to a fair trial is therefore unexhausted.

There is no remaining avenue for Petitioner to properly exhaust his claim in state court. He cannot now file a direct appeal or leave application in order to exhaust the claim because a defendant is "entitled to one (and only one) appeal to the Appellate Division," and one application for leave to appeal to the Court of Appeals. Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001). Nor can he now file a motion to vacate pursuant to N.Y. Crim. Proc. Law section 440.10(2)(c), because the facts that would support Petitioner's federal right to a fair trial claim were apparent on the record, and "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." Id. (citing N.Y. Crim. Proc. Law § 440.10(2)(c)); see also Clark v. Perez, 510 F.3d 382, 393 (2d Cir. 2008) (holding that "even if no state court had applied section 440.10(2)(c) to Clark's claim, the district court itself should have done so in the first instance pursuant to the exhaustion requirement for federal habeas"). Since no remaining avenue exists in which Petitioner could properly present his claim to the state courts, it is deemed exhausted but also procedurally defaulted. Coleman, 501 U.S. at 731–32; Aparicio, 269 F.3d at 89–90.

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice. E.g., House, 547 U.S. at 536–39 ("In an effort to 'balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case,' the Court has recognized a miscarriage-of-justice exception." (quoting Schlup, 513 U.S. at 324)); see also Dunham, 313 F.3d at 730 ("[A]ctual innocence means factual innocence, not mere legal insufficiency." (alteration in original)). To establish cause, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. Maples v. Thomas, 565 U.S. 266, 280 (2012) (citing Coleman, 501 U.S. at 753). If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. Murray v. Carrier, 477 U.S. 478, 496 (1986) (discussing the "cause-and-prejudice standard"); Stepney v. Lopes, 760 F.2d 40, 44–45 (2d Cir. 1985) (same).

Petitioner does not assert any basis for finding cause to excuse the default of his claim. Pet.; Traverse. Since Petitioner has not shown cause, the Court need not decide whether he will suffer actual prejudice before foreclosing habeas review. Murray, 477 U.S. at 496; Bossett v. Walker, 41 F.3d 825, 828–29 (2d Cir. 1994) (concluding that the petitioner did not satisfy the cause and prejudice showing where he failed to properly exhaust his federal claim in state court).

Finally, Petitioner makes no showing that he is actually innocent. He raises several technical arguments regarding his conviction, but he has not proffered any new evidence that would make a reasonable jury doubt his guilt. See Poindexter v. Nash, 333 F.3d 372, 380–81 (2d

Cir. 2003) (noting that "the concept of actual innocence is distinct from the concept of legal innocence," and a petitioner whose "argument is a technical one" does not raise "a claim of 'actual innocence' as that term is used . . . in habeas jurisprudence generally" (alterations omitted)); Williams v. Brown, No. 08-CV-10044, 2010 WL 850182, at *3 (S.D.N.Y. Mar. 11, 2010) (rejecting actual innocence claim where "[t]he evidence adduced by [the petitioner] solely concerns certain alleged procedural irregularities . . . none of which casts any doubt on [his] underlying guilt").

Without a showing of cause and prejudice, or a fundamental miscarriage of justice, the Court cannot consider these claims. Accordingly, the Court rejects Petitioner's claim that the admission of Sergeant Bonno's testimony regarding "carding" was unduly prejudicial and denied him a right to a fair trial.[5]

### C.    Ineffective Assistance of Trial Counsel Claims

Petitioner argues that he was denied the effective assistance of trial counsel because his attorney failed to renew his motion to dismiss, object to certain "inadmissible testimony" from a witness, object to "bolstering" testimony, "memorize the 'prompt outcry' instruction before trial," and "object to the manner in which the prosecutor attempted to impeach [a defense

---

[5] Even if this claim was properly before the Court, it would be rejected. Petitioner's claim that the testimony was prejudicial and violated his federal right to a fair trial presents a question of state evidentiary law that generally is not subject to federal habeas review. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) ("[F]ederal habeas corpus relief does not lie for errors of state law.'" (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)). Federal courts may issue a writ of habeas corpus based upon state evidentiary errors only if the petitioner demonstrates that there was an error by the state court and that the "state court's erroneous conclusions about New York evidence law were so egregious as to implicate the Fourteenth Amendment's guarantee of due process," which is one of "fundamental fairness," and is "defined . . . very narrowly." Evans v. Fischer, 712 F.3d 125, 133 (2d Cir. 2013) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)).

witness].” Pet. at 7. The Appellate Division rejected these claims on appeal, and that conclusion was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

To demonstrate ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and that but for counsel's alleged errors, the result of the proceedings would have been different. Premo, 562 U.S. at 121–22; Strickland v. Washington, 466 U.S. 668, 694 (1984). “Strickland does not guarantee perfect representation, only ‘a reasonably competent attorney.’” Richter, 562 U.S. at 110 (quoting Strickland, 466 U.S. at 687). A petitioner must overcome “a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’” Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Even if a petitioner can establish that counsel was deficient, he still must show that he suffered prejudice. Id. at 693–94.

Meeting this burden is “never an easy task . . . [and] [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.” Premo, 562 U.S. at 122; see also Burt v. Titlow, 134 S. Ct. 10, 16 (2013) (noting that “AEDPA erects a formidable barrier” to federal habeas review of claims that have been adjudicated in state court). When reviewing a state court's decision under § 2254, “‘[t]he question is not whether a federal court believes the state court's determination’ under the Strickland standard ‘was incorrect but whether that determination was unreasonable—a substantially higher threshold.’” Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).

17

Federal habeas courts "must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)" because "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." Richter, 562 U.S. at 105. Instead, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

In this case, as the Appellate Division found, "[v]iewed as a whole, the record reveals that counsel . . . made appropriate pretrial motions, pursued a credible—though ultimately unsuccessful—theory of defense, conducted vigorous cross-examination of the People's witnesses, and otherwise provided defendant with meaningful representation." Bjork, 963 N.Y.S.2d at 479. For example, counsel filed a motion to dismiss counts four, five, and six of the indictment pursuant to CPL § 30.30(1), which was "essentially a speedy trial motion." Trial Tr. at SR 997–1002. Counsel properly agreed to the judge's questioning of potential jurors regarding Petitioner's "failure to testify," and to certain jury charges, id. at SR 1007, requested the preclusion of prior convictions, which was, in part, successful, id. at SR 1009–13, actively participated in jury selection, e.g., id. at SR 1031, 1080–81, 1089, pursued a credible defense strategy, made numerous objections, noted exceptions, and made cogent opening and closing statements, e.g., id. at SR 1297–99, 1308, 1355, 1337–38, 1504–05, 1508, 1510, 1866–68, 1980–81. Moreover, counsel made a number of other motions on Petitioner's behalf, including a motion to declare a mistrial pursuant to N.Y. Crim. Proc. Law section 280.20(1), Trial Tr. at SR 1555–58, a motion to dismiss all counts of the indictment, id. at SR 1748–50, a motion to include a missing witness charge, id. at SR 1754–55, and a "renew[ed]" motion to dismiss "all counts of the indictment," id. at SR 1838–42. "[I]t is difficult to establish ineffective assistance

when counsel's overall performance indicates active and capable advocacy." <u>Richter</u>, 562 U.S. at 111.

### 1. Renewed Motion to Dismiss

Petitioner first claims that counsel was ineffective when he failed to renew his trial motion to dismiss following the State's presentation of rebuttal testimony and "thereby failed to preserve the [ ]sufficiency claim for appeal." Pet. at 7. Respondent argues that even if Petitioner could show that counsel had no strategic or other legitimate reason for not renewing his dismissal motion, he cannot establish that counsel's failure to preserve the sufficiency claim prejudiced his case. Opp. at 35. In the context of a habeas petition, the question is not whether counsel's failure to object constituted ineffective assistance, but whether the Appellate Division unreasonably concluded that it was not ineffective assistance. <u>See</u> <u>Richter</u>, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable."). Here, the Appellate Division denied Petitioner's claim that he was denied effective assistance of counsel when trial counsel failed to renew the motion to dismiss after the State's presentation of rebuttal evidence. <u>Bjork</u>, 963 N.Y.S.2d at 479. The Appellate Division found that Petitioner received effective assistance of counsel and noted that he "concedes that this single failure [to renew his trial motion to dismiss] was not sufficiently egregious and prejudicial to deprive him of that right." <u>Id.</u> Additionally, Petitioner cannot show prejudice because the court effectively reviewed the sufficiency claim when it reviewed his weight of the evidence claim. Accordingly, and in light of Petitioner's failure to demonstrate that he was prejudiced, the Appellate Division's finding was reasonable and supported by the record.

*2. Failure to Object to Inadmissible Testimony*

Petitioner next claims that counsel was ineffective for failing to object to "inadmissible testimony" from the victim regarding "what [the victim] did after the victim instructed [Petitioner] to leave." Pet. at 7. Petitioner does not specify the testimony to which he objects, making it difficult to review his claim. Indeed, as noted by Respondent, Opp. at 36–37, Petitioner fails to identify the alleged "inadmissible testimony" and does not identify the legal basis on which the evidence was inadmissible.[6] The Court finds Petitioner's argument too vague to state a claim for habeas relief. See, e.g., Brown v. New York, No. 04-CV-1087, 2006 WL 3085704, at *7 (E.D.N.Y. Oct. 30, 2006) (denying habeas relief where the petitioner made vague and conclusory allegations); Skeete v. New York, No. 03-CV-2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief."). Accordingly, the claim is denied as too vague to warrant relief and, therefore, is dismissed.

*3. Failure to Object to "Bolster[ed]" Testimony*

Petitioner claims trial counsel was ineffective for failing to object to a witness's "bolstering testimony about the 'carding' experiment." Pet. at 7. But a claim of alleged improper bolstering is not cognizable on federal habeas review. "[A]lthough bolstering is a practice prohibited in various states, including New York, the practice is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process right to a fair trial." Campbell v. Poole, 555 F. Supp. 2d 345, 371 (W.D.N.Y. 2008) (quoting

---

[6] Respondent addresses an argument Petitioner made on direct appeal, which was that counsel was ineffective for failing to object to "inadmissible testimony" from another witness because the testimony was allegedly elicited by leading questions. Opp. at 36–37.

Vega v. Berry, 90-CV-7044, 1991 WL 73847, at *1 (S.D.N.Y. April 29, 1991)). "It has been observed that 'this Circuit has never regarded the practice of bolstering as inimical to trial fairness.'" Id. (quoting Orr v. Schaeffer, 460 F. Supp. 964, 967 (S.D.N.Y. 1978); accord Harris v. Hollins, 95-CV-4376, 1997 WL 633440, at *3 (S.D.N.Y. Oct.14, 1997) ("The concept of 'bolstering' really has no place as an issue in criminal jurisprudence based on the United States Constitution. It is at most a New York State rule or policy, . . . [v]iolation of [which] does not rise to a constitutional level." (quoting Ayala v. Hernandez, 712 F.Supp. 1069, 1074 (E.D.N.Y. 1989) (alterations in original))).

Moreover, even if the claim were cognizable, the Appellate Division found that Petitioner's "claim that his counsel should have made various objections is unsupported by any showing that these objections were meritorious or that counsel had no strategic reason for failing to make them and counsel did make many successful objections in the course of the trial." Bjork, 963 N.Y.S.2d at 479. Based on a review of the Record, the Court concludes that the Appellate Division did not unreasonably find that trial counsel committed no error by refraining from objecting during the challenged testimony. Petitioner's claim is therefore denied.

### 4. Failure to "Memorize" the "Prompt Outcry" Instruction

Petitioner argues that he received ineffective assistance of trial counsel because trial counsel "failed to memorize the 'prompt outcry' instruction before trial." Pet. at 7. Respondent argues that there is no authority to support Petitioner's argument and that trial counsel properly requested "the precise language of the proposed instruction in order to determine whether it was objectionable." Opp. at 39 (citing Strickland, 466 U.S. at 690). Respondent also argues that

Petitioner "failed to establish a reasonable probability that he was prejudiced by counsel's conduct." Opp. at 39.

The Appellate Division's rejection of this claim was reasonable. <u>Bjork</u>, 963 N.Y.S.2d at 479. During the charge conference, which occurred outside the presence of the jury, the prosecutor requested that the judge provide the "prompt outcry" instruction. Trial Tr. at SR 1848–50. Trial counsel stated he was "not familiar with what the prompt outcry charge says." <u>Id.</u> at SR 1850. In response, the trial judge read the proposed jury charge word-for-word to counsel. <u>Id.</u> at SR 1851. Trial counsel objected to the charge, which was overruled. <u>Id.</u> Petitioner has made no showing that his trial counsel's performance was deficient during this episode.

*5. Failure to Object to Attempted Impeachment of Defense Witness J.T.*

Petitioner argues that trial counsel rendered ineffective assistance of counsel by failing to object to the manner in which the prosecutor "attempted to impeach [defense witness J.T.]" Pet. at 7. On direct appeal, Petitioner argued that the prosecutor "did not lay the proper foundation" to "attack[] her credibility based on the fact that she had not reported her observations to the police earlier." R. at SR 35. Petitioner relied on <u>People v. Dawson</u>, 406 N.E.2d 771 (N.Y. 1980), to support his argument that the prosecutor failed to establish that the witness was aware of the exact charges against Petitioner and failed to establish that the witness had reason to recognize that she possessed exculpatory information or that she "had a reasonable motive for acting to exonerate [Petitioner]." R. at SR 35–36. In <u>Dawson</u>, the Court of Appeals explained that a

> "District Attorney *may* lay a 'proper foundation' for . . . cross-examination [concerning a failure to come forward at an earlier date] by first demonstrating that the witness was aware of the nature

> of the charges pending against the defendant, had reason to recognize
> that he possessed exculpatory information, had a reasonable motive
> for acting to exonerate the defendant and, finally, was familiar with
> the means to make such information available to law enforcement
> authorities."

406 N.E.2d at 777 n.4 (emphasis added). Petitioner further argued that "if [trial] counsel had objected, the objection would have been sustained." R. at SR 35.

The Appellate Division's rejection of this claim, Bjork, 963 N.Y.S.2d at 479, was reasonable. The Record supports the court's conclusion that the prosecutor laid adequate foundation for J.T.'s testimony, eliciting the following: J.T. was the Petitioner's cousin with whom she associated, Trial Tr. at SR 1817, 1823, J.T. was aware of the "accus[ations]" against the Petitioner since his arrest, id. at SR 1834, and J.T. did not contact the police with information regarding the incident that she possessed, id. at SR 1834–35. While the prosecutor did not question J.T. regarding her "familiar[ity] with the means to make such information available to law enforcement authorities," trial counsel reasonably could have refrained from objecting due to the possibility that the prosecutor could have easily questioned the witness regarding "the means to make such information available to law enforcement authorities" and, as a result, undermined the witness's credibility. Dawson, 406 N.E.2d at 777 n.4. Accordingly, Petitioner's claim that trial counsel was ineffective by failing to object to the manner in which the prosecutor attempted to impeach J.T. is without merit.

In sum, Petitioner has failed to show that trial counsel's performance fell below an objective standard of professional reasonableness, or that he was prejudiced by any such deficiency. Therefore, for the reasons set forth above, the ineffective assistance of trial counsel claim is denied and dismissed.

**D. Ineffective Assistance of Appellate Counsel Claims**

Petitioner claims his appellate counsel was ineffective because he failed to make the following arguments: (1) the indictment should have been dismissed because the prosecutor did not instruct the grand jury regarding the affirmative defense set forth in Penal Law section 130.10(1),[7] "impair[ing]" the "integrity" of the proceeding, and (2) the trial court abused its discretion in allowing the State to represent to the grand jury charges upon which a prior jury had been deadlocked. Pet. at 8; Traverse at 14–15. Respondent argues Petitioner cannot demonstrate that appellate counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker. Opp. at 44–45. Respondent also argues the claims are not cognizable on federal habeas review and, in any event, lack merit. Id. at 41–50.

The Strickland test applies to claims of ineffective assistance of appellate counsel. To prevail, a petitioner must demonstrate that: (1) appellate counsel's performance fell below an objective standard of professional reasonableness, and (2) but for appellate counsel's "unprofessional errors," the results of the proceedings would have been different. Smith v. Robbins, 528 U.S. 259, 285–86 (2000). When challenging the effectiveness of appellate counsel, a petitioner may establish constitutionally inadequate performance if he shows counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). "A petitioner must show more than counsel's failure to raise a non-frivolous argument, because counsel is required to use

---

[7]    NY Penal Law section 130.10(1) provides, "In any prosecution under this article in which the victim's lack of consent is based solely upon his or her incapacity to consent because he or she was mentally disabled, mentally incapacitated or physically helpless, it is an affirmative defense that the defendant, at the time he or she engaged in the conduct constituting the offense, did not know of the facts or conditions responsible for such incapacity to consent."

professional judgment when deciding to concentrate on a few key issues while eliminating weaker arguments, and is not required to advance every argument urged by the petitioner." Hines v. Stallone, No. 16-CV-1078, 2017 WL 445387, at *9 (N.D.N.Y. Feb. 1, 2017) (citing Evitts v. Lucey, 469 U.S. 387, 394 (1985)).

Petitioner raised these claims in his coram nobis petition, R. at SR 2152–2216., and they were rejected by the Appellate Division, id. at SR 2217. Petitioner has failed to demonstrate the alleged errors in the grand jury proceedings were significant and obvious issues that appellate counsel omitted in favor of issues that were clearly and significantly weaker. The Record shows appellate counsel submitted a sixty-seven page brief, raising numerous relevant issues. Id. at SR 1–71. Petitioner's appeal was partially successful—the Appellate Division reversed his criminal sexual act convictions because they were based on uncorroborated admissions. Bjork, 963 N.Y.S.2d at 476.

Moreover, Petitioner's claims of alleged errors in the grand jury proceedings are not cognizable on habeas review. Indeed, "alleged errors in a grand jury proceeding, including sufficiency of the evidence presented, are not cognizable on habeas review." Vassar v. Artus, No. 08-CV-41, 2016 WL 3632712, at *6 (N.D.N.Y. June 29, 2016). Even assuming the existence of a federal right to indictment by a grand jury, any error in grand jury proceedings is necessarily cured by the subsequent conviction by a petit jury on the charges in the indictment. Campbell, 440 F. Supp. 2d at 142–43. A petit jury's subsequent guilty verdict means not only that there was probable cause to believe that a petitioner was guilty as charged, but also that a petitioner is in fact guilty as charged beyond a reasonable doubt. United States v. Mechanik, 475 U.S. 66, 70 (1986).

Thus, the Appellate Division's rejection of these claims was reasonable and was not contrary to clearly established Supreme Court precedent. See Gant v. Walsh, No. 07-CV-2427, 2008 WL 2697319, at *11 (E.D.N.Y. July 3, 2008) (noting that "courts have consistently held that counsel's failure to ensure that the defendant testifies before the grand jury does not amount to ineffective assistance of counsel" and that "any error in the grand jury proceeding connected with the charging decisions is harmless beyond a reasonable doubt"). Accordingly, Petitioner's ineffective assistance of appellate counsel claim is dismissed.

## V.     CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED and DISMISSED**; and it is further

**ORDERED**, that no Certificate of Appealability ("COA") shall issue because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[8] and it is further

**ORDERED**, that the Clerk serve a copy of this Decision and Order on the parties.

---

[8]    See, e.g., Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) ("[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"); Richardson v. Greene, 497 F.3d 212, 217 (2d Cir. 2007) ("Where, as here, the denial of the habeas petition is based upon procedural grounds, the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation.").

**IT IS SO ORDERED.**

DATED:     August 07, 2017
           Albany, New York


Lawrence E. Kahn
U.S. District Judge